UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**RKR Technologies, Ltd.,**

   Plaintiff,

**v.**                                                    **No. 4:25-cv-00902-P**

**Recaro Aircraft Seating Americas, LLC,**

   Defendant.

## OPINION & ORDER

Before the Court is Defendant's Motion to Dismiss ("Motion") for improper venue under Federal Rule of Civil Procedure 12(b)(3). ECF No. 9. Since the doctrine of *forum non conveniens* is the correct procedural avenue to enforce a foreign forum selection clause, we apply that legal standard to Defendant's Motion. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). Having considered the Motion and applicable law, the Court **GRANTS** the Motion.

## BACKGROUND[1]

This case arises from a commercial dispute between Plaintiff RKR Technologies, Ltd., doing business as Rocket Air Supply ("Rocket"), and Defendant Recaro Aircraft Seating Americas, LLC ("Recaro"), concerning the supply of parts for aircraft seats.

In October 2018, the Parties entered into a Global Framework Supply Agreement ("GFSA"). Under that agreement, Rocket agreed on a non-exclusive basis to supply various parts that Recaro could purchase at specified prices. The following month, the Parties executed several amendments to the GFSA. Over time, Recaro became dissatisfied with

---

[1]Because the Court accepts all well-pleaded facts as true and view them in the light most favorable to the Plaintiff, the Court sets forth the facts as alleged in the Complaint. *See Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019).

Rocket's performance. In March 2025, Recaro notified Rocket that it was invoking the GFSA's termination provision and would soon stop purchasing parts.

According to Rocket's Amended Complaint (ECF No. 6), the GFSA required Recaro to provide at least twelve months' notice before termination. During that period, Rocket contends, Recaro was required to continue purchasing all forecasted parts. At the end of the twelve months, Rocket asserts Recaro should have purchased both the "stock on hand" (three months of forecasted supply) and the "safety stock" (sixty days' usage) held in Rocket's warehouse.

Recaro has moved to dismiss the complaint, arguing that the GFSA's forum-selection clause mandates litigation in Germany. The clause provides:

> This Global Framework Supply Agreement shall be interpreted and construed according to, and governed by, the laws of Germany, under the exclusion of the UN Sales Convention (CISG). The place of jurisdiction shall be RECARO Aircraft Seating GmbH & Co. KG, Heilbronn.

Relying on that language, Recaro contends the forum-selection clause is mandatory and enforceable and this case was improperly brought in Texas. Among other things, Recaro argues that precedent supports its interpretation of the clause and German courts are better suited to apply German law.

Rocket disagrees. It maintains that precedent renders the clause permissive, not mandatory, and enforcing it would be unreasonable under the circumstances. Rocket also emphasizes that nearly all activity relevant to this dispute occurred in Texas. Both Rocket and Recaro maintain their principal places of business in Tarrant County. Recaro's ownership ultimately traces through a Michigan entity to a German corporation, but its operations and employees are based in Texas.

In light of the Parties' arguments, the relevant contractual language, and the governing law, the Court now considers Recaro's motion.

## LEGAL STANDARD

The doctrine of *forum non conveniens* is the procedural avenue to enforce a foreign forum-selection clause. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). When the forum-selection clause points to a foreign forum, dismissal is appropriate under *forum non conveniens*. *Id.*

Typically, a court considering a *forum non conveniens* motion is required to evaluate both "private interests of the parties and public-interest considerations." *Atl. Marine*, 571 U.S. at 64. The private-interest factors are "[t]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witness; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Ipsen Biopharm Ltd. v. Galderma Lab'ys, L.P.*, 660 F. Supp. 3d 538, 546 (N.D. Tex. 2023) (*citing Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 342 (5th Cir. 1999)). The public-interest factors are "[t]he administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Id.*

In addition, "only mandatory clauses justify transfer or dismissal." *Weber v. PACT XPP Techs.*, AG, 811 F.3d 758, 768 (5th Cir. 2016). And the "existence of a mandatory, enforceable [forum-selection clause] dramatically alters the analysis." *Id.* at 767. Indeed, where there is a mandatory forum selection clause, the plaintiff's choice of forum "merits no weight", and the burden falls with Plaintiff to establish that a *forum non conveniens* dismissal is unwarranted. *Id.* at 581–82. Also, where there is a mandatory forum selection clause, the Court should not consider the private-interest factors because the Parties "waive[d] the right to challenge their preselected forum as inconvenient...." *Id.* at 582. In that case, the court should consider only public-interest factors. *Id.*

Nonetheless, "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 63, 134 S.Ct. 568.

## ANALYSIS

The Parties' dispute turns on how to interpret the forum-selection clause. Rocket contends the clause is permissive and unenforceable, while Recaro argues it is mandatory and enforceable. The Court must resolve that question before weighing any *forum non-conveniens* factors. For the reasons explained below, the Court concludes that the clause is mandatory and enforceable. The Court further finds that the *forum non-conveniens* does not justify disturbing the Parties' choice of forum.

As the Fifth Circuit recognized in *Weber*, "the question of enforceability is analytically distinct from the issue of interpretation: Only after the court has interpreted the contract to determine whether it is mandatory or permissive does its enforceability come into play." *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 770 (5th Cir. 2016). Accordingly, this analysis proceeds in two parts. First, the Court determines whether the clause is mandatory or permissive. Second, the Court addresses whether the clause is enforceable.

### 1. The Forum-Selection Clause is Mandatory.

To analyze whether the forum-selection clause at issue in *Weber* was mandatory or permissive, the Fifth Circuit took a three-step approach: The court first sought the best English-language rendering of the clause, then applied Texas choice-of-law rules to determine the governing law, and finally applied that law to decide whether the clause was mandatory or permissive. *Id.* at 769. This Court follows the same approach.

First, the clause is already in English, so no translation is necessary.

Second, "[a] federal court sitting in diversity applies the forum state's choice-of-law rules to determine which substantive law will apply." *Weber*, 811 F.3d at 770 (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). Here, applying Texas choice-of-law rules, German substantive law governs. "The Supreme Court of Texas has recognized that contractual choice of law provisions should generally be

4

enforced, but has also stated that the Parties' freedom to choose what jurisdiction's law will apply is not unlimited.'" *Ipsen Biopharm* 660 F. Supp. 3d at 550 (citing Barnett *v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 304 (5th Cir. 2016). Here, neither party challenges the GFSA's choice-of-law provision, and both agree German law governs. The Court thus applies the standard presumption under Texas law that the choice-of-law provision is enforceable. Accordingly, German law must guide the Court's substantive analysis of whether the forum selection clause is mandatory or permissive.

Third, because neither party briefed the application of German law in the Motion, Response, or Reply, the Court ordered the Parties to submit supplemental briefing on how German law applies to the forum selection clause. ECF No. 15. Subsequently, the Parties filed their briefs. ECF Nos. 16, 19. In those briefs, both Parties agree that the controlling law should be a legal instrument known as the Brussels Ia Regulation. ECF No. 15 at 2 (Recaro explaining that the controlling instrument is the Brussels Ia Regulation.); ECF No. 19 at 2 (Rocket acknowledging that their expert "agrees with the Aktas Declaration from Recaro Americas that Article 25 of the "Brussels Ia Regulation" applies.).

Article 25(1) of the Brussels Ia Regulation, which both Parties agree is controlling, provides that:

> If the parties, regardless of their domicile, have agreed that a court or the courts of a Member State are to have jurisdiction to settle any disputes which have arisen or which may arise in connection with a particular legal relationship, that court or those courts shall have jurisdiction, unless the agreement is null and void as to its substantive validity under the law of that Member State. *Such jurisdiction shall be exclusive unless the parties have agreed otherwise.*

Brussels Ia Regulation at Art. 25(1) (emphasis added).

Because the forum-selection clause in the GFSA meets the formal prerequisites of Article 25(1), Recaro contends the clause must be treated as exclusive absent some contrary agreement by the Parties. Put differently, Article 25(1) itself supplies exclusivity to the forum-selection clause at issue. Rocket takes the opposite view, asserting the Parties *did*

"agree[] otherwise" within the GFSA. According to Rocket, the agreement contains multiple forum-selection clauses that must be read together as an agreement to non-exclusivity.

Rocket argues several exhibits incorporated into the GFSA, most notably Exhibits 4 and 7, contain their own forum-selection clauses and although the present dispute centers on the forum-selection clause in Exhibit 7, the contrast between Exhibit 4's forum selection clause phrasing demonstrates evidence of an agreement not to make jurisdiction exclusive in Exhibit 7. Exhibit 4 reads "[t]he exclusive place of jurisdiction is, as far as legally permitted, the purchaser's domicile" *See* GFSA at Ex. 4, p. 60. Rocket argues the Parties' deliberate inclusion of the word "exclusive" for disputes falling under Exhibit 4 supports the conclusion that they intended exclusivity there but not in Exhibit 7, where the word "exclusive" is absent.

Rocket's argument is unavailing. It relies on inference from drafting variance rather than on any affirmative agreement to displace Article 25(1)'s default exclusivity. Article 25(1) makes jurisdiction exclusive "unless the Parties have agreed otherwise," which places the burden on the party asserting non-exclusivity to point to a clear, mutual agreement to that effect. The GFSA contains separate, context-specific forum provisions tailored to different exhibits; the fact that Exhibit 4 uses the word "exclusive" while Exhibit 7 does not is at best a drafting variance and not the mutual assent Article 25(1) requires to rebut exclusivity. Reading omission as an affirmative agreement to non-exclusivity would permit Parties to evade Article 25(1)'s requirement through mere silence. Because Rocket points to no express agreement displacing exclusivity, its argument that the Parties "agreed otherwise" is unpersuasive. Therefore, the Court determines that the forum-selection clause of the GFSA is mandatory.

### 2. The Forum-Selection Clause is Enforceable

Having determined that the forum-selection clause in the GFSA is mandatory, the Court now turns to consider whether it is enforceable. As the Fifth Circuit has repeatedly emphasized, there is a "strong presumption" in favor of enforcing mandatory forum-selection

clauses. *Al Copeland Invs., L.L.C. v. First Specialty Ins. Corp.*, 884 F.3d 540, 543 (5th Cir. 2018); *see also Weber*, 811 F.3d at 773. "This presumption may be overcome by a clear showing that a forum-selection clause is unreasonable under one of the following circumstances: (1) the incorporation of the forum-selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene a strong public policy of the forum state." *Al Copeland*, 884 F.3d at 543 (cleaned up). Here, all four factors favor enforcement.

First, neither party argues that the GFSA was a product of fraud or overreach.

Second, Rocket has not met its heavy burden of showing that litigating in Germany would be so difficult it would be deprived of its day in court. There is no indication, nor has Rocket argued, that Germany would not offer a fair judicial system capable of granting the same relief. Further, Rocket's claim that Germany is a "remote, alien forum" is not persuasive. Rocket had notice of the forum-selection clause, and any inconvenience resulting from the remoteness of the venue was foreseeable at the time of contracting. *See Bremen v. Zapata Off-Shore*, 407 U.S. 1, 18 (1972). In addition, Rocket's argument that the location of witnesses and documents being in Texas would result in grave inconvenience also fails because modern technology makes remote litigation feasible, especially when most evidence is electronic, as here. *In re TikTok*, 85 F.4th 352, 358–59 (5th Cir. 2023).

As to the third factor, there is also no indication, nor has Rocket argued, that there would be any fundamental unfairness in German law that would deprive Rocket of a remedy in this case.

As to the fourth factor, enforcing the forum-selection clause does not offend Texas public policy. The Fifth Circuit has recognized that "Texas recognizes a 'strong public policy in favor of preserving the freedom of contract.'" *Am. Int'l Specialty Lines Ins. Co. v. Res-Care Inc.*, 529 F.3d

649, 662 (5th Cir. 2008) (citing *Fairfield Ins. Co. v. Stephens Martin Paving*, LP, 246 S.W.3d 653, 664 (Tex. 2008)). Here, the Parties expressly agreed to exclusive jurisdiction in Germany. Enforcing that choice is consistent with Texas's policy interests.

In light of the strong presumption in favor of enforcing forum-selection clauses, and because Rocket has not established that the forum-selection clause is unreasonable, the Court concludes the forum-selection clause is enforceable.

### 3. The Public-Interest Factors Favor Dismissal

Because the forum-selection clause is both mandatory and enforceable, the *Atlantic Marine* framework dictates that the private-interest factors "strongly favor dismissal." *Weber*, 811 F.3d at 775. At this stage, a full *forum non conveniens* analysis is neither required nor necessary. Instead, the Court's analysis turns to the question of whether this is one of the "rare cases in which the public-interest factors favor keeping a case" despite the presence of a mandatory and enforceable forum-selection clause. *Id.* at 775–76. Ultimately, the Court must determine whether the public-interest factors "so greatly outweigh the private-interest factors as to justify retaining the case in the United States despite the Parties' agreement." *Id.* at 776.

The Fifth Circuit has identified the specific public-interest factors relevant here:

> (1) administrative difficulties flowing from court congestion;
> (2) local interest in having localized controversies decided at home;
> (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action;
> (4) the avoidance of unnecessary problems in conflict of laws; and
> (5) the unfairness of burdening citizens in an unrelated forum with jury duty.

*Id.* The Court addresses each factor in turn.

First, the Court considers its own congestion. Neither party has presented evidence on this factor. However, the Northern District of Texas has one of the busiest dockets in the entire country. *See Chamber of Com. of the U.S. v. CFPB*, 735 F. Supp. 3d 731 (N.D. Tex. 2024) (Pittman, J.) (pointing out that the Northern District of Texas has a busier docket than the District Court for the District of Columbia). Indeed, as of June 30, 2025, the Northern District of Texas, had 522 pending cases per judgeship and 6,259 pending actions total. *See Perez v. Genoptix, Inc.*, No. 4:19-cv-00309-O, 2018 WL 11435300, at *3 (N.D. Tex. Nov. 6, 2018) (stating that to assess relative court congestion between districts, courts may analyze federal judicial caseload statistics when determining whether to transfer). And within the Northern District of Texas, the Fort Worth division is the busiest—two to three times busier than even the large docket managed by the Dallas Division. *See Outsourcing Facilities Ass'n v. United States Food & Drug Admin.*, No. 4:24-cv-00953-P, 2025 WL 1782574, at *1 (N.D. Tex. Mar. 26, 2025) (cleaned up). Accordingly, the Court finds this factor favors dismissal.

Second, the Court considers the local interest in deciding localized disputes. Here, there is a reasonable argument that Texas Courts have a local interest in adjudicating contract disputes between Parties who do business in the state. Nonethless, that interest cannot overcome the Parties' contractual choice of forum. *See Ipsen Biopharm*, 660 F. Supp. 3d at 554. Further, because Recaro is a German citizen, Germany's sovereign interest in resolving the dispute is at least equal to that of Texas's. At most, then, the local-interest factor is neutral because the interest cannot overcome the Parties' contractual choice of forum and because both Germany and Texas have comparable interests in the litigation.

Third, as the Court has already noted, the GFSA is governed by German law, which neither party disputes. If this Court were to retain jurisdiction, it would be required to interpret the GFSA and assess the Parties' competing positions under that foreign legal framework. Resolving the Motion currently before the Court has already illustrated the practical difficulties of doing so: After the Parties declined to address German law in their briefing, the Court had to direct supplemental

briefing on German law and then undertake its own analysis of that unfamiliar framework. This is a dangerous exercise. And although Texas courts are capable of applying foreign law, the more sensible course is to allow a German court, fully fluent in the governing legal principles, to resolve a dispute centered on German contract law. This consideration weighs heavily in favor of dismissal.

The fourth factor is similar to the third. As just mentioned, this dispute will be entirely governed by German law, and even if American law retained some applicability to this lawsuit, the Court would need to analyze the GFSA under German law to reach that conclusion. Accordingly, the fourth public-interest factor strongly favors dismissal.

Finally, the fifth factor considers whether jury duty would be imposed on citizens in a forum with little connection to the dispute. Although the Parties' dealings appear to have occurred largely in Texas giving Texas citizens some interest in the case, the citizens of Germany have an equal interest because Recaro is a German citizen and the forum-selection clause confers jurisdiction in Germany. Accordingly, this factor is neutral.

Because the second and fifth factors are neutral, and the first, third, and fourth factors support dismissal, the public-interest factors on balance favor enforcing the forum-selection clause.

## CONCLUSION

Having considered the mandatory and enforceable nature of the forum-selection clause and the relevant public-interest factors, the Court finds that the Northern District of Texas is not an appropriate forum for this case. Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss and Plaintiff's claims are **DISMISSED without prejudice.**

**SO ORDERED** on this **15th day of December 2025.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE